UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
  THOMAS ASMAH,

                                Plaintiff,

         -v-
                                        15-CV-3742 (JPO)

  US CONSULATE ACCRA GHANA;
  NATIONAL VISA CENTER; UNITED          OPINION AND ORDER
  STATES DEPARTMENT OF STATE; UNITED
  STATES CITIZENSHIP AND IMMIGRATION
  SERVICES; UNITED STATES DEPARTMENT
  OF HOMELAND SECURITY,

                                Defendant.
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

       Plaintiff Thomas Asmah filed this *pro se* action on May 4, 2015. (Dkt. No. 2.) In his Complaint, Thomas asserts tort claims related to an alleged assault by consular staff at the United States Embassy in Ghana (the "Embassy"). (*Id.*) Thomas also seeks an order compelling Defendants—the U.S. Consulate Accra Ghana, the National Visa Center ("NVC"), the United States Department of State (the "State Department"), United States Citizenship and Immigration Services ("USCIS"), and the United States Department of Homeland Security ("DHS")—to grant his wife's visa application. Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 23.) For the reasons that follow, the motion to dismiss is granted under Rule (12)(b)(1) and Asmah is given leave to amend his Complaint.

I.     Background

       The following facts are taken from Asmah's Complaint and from declarations by State Department and DHS officials (the "Government Declarations"), which Defendants filed in support of their motion to dismiss for lack of subject matter jurisdiction. (Dkt. No. 24-1, 24-2.)

1

*See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings."); *HealthNow N.Y., Inc. v. State of New York*, 739 F. Supp. 2d 286, 292 (W.D.N.Y. 2010) ("The court may consider affidavits and other evidence outside the pleadings to resolve the [Rule 12(b)(1)] jurisdictional issue . . . . Indeed, courts 'must' consult factual submissions 'if resolution of a proffered factual issue may result in dismissal of the complaint for want of jurisdiction.'" (quoting *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n.6 (2d Cir. 2001))). For the purpose of this motion, the Court assumes that all allegations in Asmah's Complaint are true.

Thomas Asmah is a United States citizen who resides in Bronx, New York. (Dkt. No. 2 at 4.) His wife, Grace Asmah, is a citizen and resident of Ghana. (*Id.* at 3.) On July 9, 2012, Asmah filed a petition with USCIS seeking an immigrant visa for his wife (the "Petition"). (Dkt. No. 24-1 ¶ 5.) USCIS approved the Petition and forwarded it to the National Visa Center to be processed. (*Id.*) Grace Asmah thereafter attended three interviews with consular staff at the Embassy. (*Id.* ¶ 6; Dkt. No. 2 at 3.) Following each of those interviews, a consular officer denied Grace Asmah's visa application on the ground that she "had failed to establish the bona fides of her marriage to Thomas Asmah." (Dkt. No. 24-1 ¶ 6.) After the third interview, a consular officer returned the Petition to USCIS "for review and possible revocation." (*Id.*)

After receiving the returned Petition, USCIS issued two notices of its intent to revoke the Petition, at least one of which it sent to Thomas Asmah. (*Id.* ¶ 7.) Asmah responded to the notice in August 2015. (*Id.* ¶ 8.) On November 23, 2015, USCIS determined that the Asmahs had a bona fide marriage and reaffirmed its earlier decision approving the Petition. USCIS then forwarded the reaffirmed Petition to the National Visa Center, which sent it back to the Embassy

to be processed.  (*Id.* ¶ 8; Dkt. No. 24-2 ¶ 11.)  On December 18, 2015, the Embassy sent Grace Asmah a letter requesting that she schedule and appear for another interview with consular staff.  (Dkt. No. 24-2 ¶ 12.)  Defendants assert that "Grace Thompson has not contacted the [E]mbassy to schedule another interview" and "may schedule another visa interview, at which time a consular officer will once again adjudicate her visa application."  (Dkt. No. 24 at 9.)

This action arises from Thomas Asmah's interactions with staff at the Embassy.  At some point in 2013 or 2014, Thomas Asmah visited the Embassy to attend a spousal interview with his wife.  (Dkt. No. 2 at 3.)  Asmah alleges that, during that visit, "he was treated unbelievably badly and [was] abused by physically and psychologically" by consular staff members.  (*Id.*)  He also alleges that he "was prompted for a bribe in order to get his duly approved spouse's permanent resident visa issued by certain staffmembers [*sic*] at the Consulate."  (*Id.*)  Based on these allegations, Thomas seeks monetary damages and an order requiring government officials to "bring [his] wife to the USA."  (*Id*. at 4.)

## II.     Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district courts lacks the statutory or constitutional power to adjudicate it."  *Marakova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  In resolving a motion to dismiss under Rule 12(b)(1), the court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  "[T]he party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists."  *Germain v. M&T Bank Corp.*, 111 F. Supp. 3d 506, 518 (S.D.N.Y. 2015) (alteration and citation omitted); *see also Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d

Cir. 2005) ("The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.").[1]

In all cases involving *pro se* plaintiffs, courts construe the complaint liberally and interpret the plaintiff's pleadings "to raise the strongest arguments they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 467 (2d Cir. 2006) (citation omitted). As a general rule, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

### III. Discussion

Thomas describes this action as a civil rights suit under 42 U.S.C. § 1983. (Dkt. No. 2 at 2.) Given the facts alleged, his Complaint can also be construed to assert: (1) claims to compel adjudication of Grace Asmah's visa petition under the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555(b), 706(1); and (2) claims arising from the alleged assault at the Embassy under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. § 1346.

#### A.   Mandamus and APA Claims

The doctrine of consular non-reviewability precludes judicial review of "a consular officer's decision to deny a visa." *Lleshi v. Kerry*, 127 F. Supp. 3d 196, 199 (S.D.N.Y. 2015) (quoting *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2d Cir. 2009)). That doctrine is not triggered, however, "until a consular officer has made a *decision* with respect to a

---

[1] Because the Court dismisses all claims under Rule 12(b)(1), the Court need not address the standards applicable to Rule 12(b)(6).

particular visa application." *Nine Iraqi Allies under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, No. 15-CV-3000, 2016 WL 927142, at *18 (D.D.C. Mar. 7, 2016); *see also Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) ("[T]he wide latitude given the Executive to grant or deny a visa application . . . does not include the authority to refuse to adjudicate a visa application."). *But see Saleh v. Holder*, 84 F. Supp. 3d 135, 139 (E.D.N.Y. 2014) (adopting a more expansive conception of consular non-reviewability).

Because consular officials have not denied Grace Asmah's Petition, and are currently prepared to interview her at the Embassy and process her visa application, the doctrine of consular non-reviewability does not bar judicial review.[2]  (*See* Dkt. No. 24 at 9, 24-2 ¶ 12.)  The jurisdictional question, instead, is whether Asmah has standing to assert claims related to his wife's visa application at this time.  *See Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*.").

"The 'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must have suffered an injury in fact' i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will

---

[2] In seeking an order "bring[ing] [his] wife to the USA," Asmah appears to assert claims based on the failure to render a final decision on Grace Asmah's immigration application. (Dkt. No. 2 at 4.)  Insofar as Asmah seeks to challenge the decision to return his wife's Petition to USCIS for possible revocation, the doctrine of consular non-reviewability precludes judicial review.  *Lleshi*, 127 F. Supp. 3d at 199.

be redressed by a favorable decision.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Courts have recognized plaintiffs' standing to file suit in cases involving significant delays in the processing of certain visa applications. *See, e.g.*, *Nine Iraqi Allies*, 2016 WL 927142, at *9 ("[Plaintiffs who allegedly waited for longer than nine months for final action on their Special Immigrant Visa ("SIV") applications] have suffered an injury in fact: the failure to receive final decisions on their SIV applications within a reasonable period."); *Am. Acad. of Religion*, 463 F. Supp. 2d at 421 ("[R]egulations [governing the issuance of nonimmigrant visas] make clear that allowing a visa application to stagnate undecided for an indefinite period of time, as the Government appears to be doing in this case, is not a permissible option. Since the Government's obligation to adjudicate visa application is clearly prescribed, failure to issue or refuse a visa within a reasonable period of time triggers mandamus jurisdiction in federal court."); *but see Saleh*, 84 F. Supp. 3d at 139-40.

But this is not such a case. Asmah's Complaint does not allege undue delay, and the Government Declarations indicate that consular staff are prepared to adjudicate Grace Asmah's petition once she appears for an interview. (*See* Dkt. Nos. 2 at 4, 24-2 ¶ 12.) Thomas Asmah does not contest this account of the status of his wife's visa application in his opposition to the motion to dismiss, nor in any other document filed since Defendants submitted the Government Declarations. (*See* Dkt. Nos. 25, 26.) It is not clear that Asmah's delay here constitutes an injury, and any such injury would not be ameliorated by a favorable decision—Grace Asmah would still need to appear for her interview before the agency can act. Asmah has not, in other words, identified any injury related to his wife's visa application that is redressable by the Court

at this time. Asmah therefore lacks standing to bring claims under the Mandamus Act or the APA. Accordingly, those claims are dismissed.

>    B.    **Tort Claims**

Asmah's second set of claims concerns his treatment by consular staff at the Embassy. (Dkt. No. 2 at 3.) While Asmah asserts a claim under 42 U.S.C. § 1983, that statute "do[es] not apply to actions against the federal government or its officers," and thus, does not provide a cause of action against Embassy staff. *Herbst v. U.S. Postal Serv.*, 953 F. Supp. 2d 463, 466 (E.D.N.Y. 2013) (citing *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)).

Instead, the Complaint is properly construed to assert a *Bivens* claim. *See Spinale v. U.S. Dep't of Agric.*, 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009), *aff'd*, 356 F. App'x 465 (2d Cir. 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to construe the complaint as stating a cause of action under *Bivens* . . . ."); *see also Schweitzer v. Dep't of Veterans Affairs*, 23 F. App'x 57, 59 (2d Cir. 2001), *cert. denied*, 535 U.S. 955 (2002) (Mem.) ("'Bivens actions' for damages against federal officers have . . . been permitted for violations of the Due Process Clause of the Fifth Amendment . . . ." (*citing Davis v. Passman*, 442 U.S. 228 (1979))).

*Bivens*, however, "affords a remedy against only federal officials and precludes actions against federal agencies." *Schweitzer*, 23 F. App'x at 59; *Herbst*, 953 F. Supp. 2d at 467; *see also Lockwood v. Fed. Bureau of Prisons*, No. 13-CV-8104, 2015 WL 4461597, at *2 n.9 (S.D.N.Y. July 21, 2015) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)) (noting that a *Bivens* action against a federal agency is essentially a suit against the United States, and thus, is barred by the doctrine of sovereign immunity). If Asmah wishes to bring a constitutional tort claim based on the alleged assault at the Embassy, he must name or

describe the *individual federal officials* involved.  Because Asmah has identified only government agencies as Defendants in this action, the Court lacks jurisdiction over his *Bivens* claim.  *Robinson*, 21 F.3d at 510; *see also Harrison v. New York*, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015) (dismissing *Bivens* claims against a federal agency for lack of subject matter jurisdiction); *Sereika v. Patel*, 411 F. Supp. 2d 397, 402 (S.D.N.Y. 2006) (same).

Finally, the Complaint can be construed to assert a claim under the FTCA.  As a general rule, the United States cannot be sued unless it waives it sovereign immunity.  *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004).  The FTCA waives sovereign immunity—and thus authorizes claims for damages against the United States— where federal employees commit torts while acting within the scope of their employment.  28 U.S.C. § 1346(b)(1).  But the FTCA contains an explicit exception for claims "arising in a foreign country."  28 U.S.C. § 2680(k); *see also Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004) ("[T]he FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred.").

This exception encompasses claims based on torts that occur at United States embassies abroad.  *See Smith v. United States*, 507 U.S. 197, 203-04 (1993) (holding that the FTCA did not apply to torts that occurred at a United States facility in Antarctica); *Meredith v. United States*, 330 F.2d 9, 11 (9th Cir. 1964) (concluding that torts in an American embassy in Bangkok fell within the FTCA's "foreign country" exception); *Okere v. U.S.A. Am. Citizens Servs.*, No. 14-C-4851, 2015 WL 3504536, at *2 (N.D. Ill. June 2, 2015) ("[T]he relevant alleged facts occurred at the U.S. Consulate [in Lagos, Nigeria] . . . such [a] facility is . . . located 'in a foreign country' for purposes of the FTCA."); *Friedman v. United States*, No. 01-CV-7518, 2003 WL 1460525, at *7 (S.D.N.Y. Mar. 18, 2003), *adopted in full*, 2003 WL 22846039 (S.D.N.Y. Dec. 1, 2003)

("[F]ederal courts have consistently held that . . . tort claims arising from government negligence occurring on the grounds of . . . an American embassy . . . are claims arising in a foreign country." (second alteration in original) (internal quotation marks and citation omitted)). Because Asmah alleges tortious conduct at the Embassy in Ghana, his claim "arose in a foreign country" and sovereign immunity applies. This Court therefore lacks jurisdiction over Asmah's FTCA claim.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. To the extent that Asmah wishes to amend the Complaint to name individual federal officials, Asmah is granted leave to amend. If Asmah chooses to file an amended Complaint, he must do so on or before June 23, 2016. Asmah may direct any questions about this Order to the Court's Pro Se Office at (212) 805-0175.

The Clerk of Court is directed to close the motion at docket number 23.

SO ORDERED.

Dated: May 23, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

COPY OF THIS ORDER, AN AMENDED COMPLAINT FORM, AND THE COURT'S INDIVIDUAL RULES OF PRACTICE IN PRO SE CASES MAILED TO PLAINTIFF BY CHAMBERS